UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, -against- EDWARD LEON, Defendant. | : | 25 Crim. 309 (LGS) **OPINION & ORDER** |

LORNA G. SCHOFIELD, District Judge, sitting by designation:

On July 29, 2025, Defendant Edward Leon was indicted on one count of malicious use of fire to destroy property resulting in death in violation of 18 U.S.C. § 844(i) (the "Initial Indictment"), a capital-eligible offense. On July 2, 2026, following then-Acting Attorney General Todd Blanche's directive to seek the death penalty against Defendant, the Government obtained a superseding indictment (the "Superseding Indictment") containing special findings pursuant to the Federal Death Penalty Act ("FDPA") and filed a notice of intent to seek the death penalty (the "NOI").

Defendant now moves to dismiss the Initial and Superseding Indictments and strike the NOI based on the involvement of John A. Sarcone III in Defendant's prosecution. In the alternative, Defendant seeks discovery and an evidentiary hearing concerning Mr. Sarcone's role in the decisions to obtain the Initial and Superseding Indictments and file the NOI. For the below reasons, Defendant's motion is denied in full.

## I. BACKGROUND

### A. Mr. Sarcone's Appointment and the *Grand Jury Subpoenas* Proceedings

The last Senate-confirmed U.S. Attorney for the Northern District of New York ("NDNY"), Carla Freedman, resigned on February 17, 2025. Upon her resignation, First

Assistant U.S. Attorney ("FAUSA") Daniel Hanlon began serving as Acting U.S. Attorney pursuant to the automatic succession provision of the Federal Vacancies Reform Act ("FVRA"), which provides that upon a vacancy in the office of U.S. Attorney, the "first assistant" to the office "shall perform the functions and duties of the office temporarily in an acting capacity." *See* 5 U.S.C. § 3345(a)(1).

Shortly thereafter, then-Attorney General Pamela Bondi appointed Mr. Sarcone as Interim U.S. Attorney for the NDNY pursuant to 28 U.S.C. § 546, the only statutory mechanism other than the FVRA for temporarily filling a vacancy in the office of U.S. Attorney. Mr. Sarcone began serving in that role on March 17, 2025. Under the statute, Mr. Sarcone's interim appointment would expire at the earlier of (1) 120 days or (2) the appointment of a U.S. Attorney under 28 U.S.C. § 541, which requires nomination by the President and confirmation by the Senate. *See* 28 U.S.C. § 546(c). The President never formally nominated Mr. Sarcone -- or anyone else -- as U.S. Attorney. Accordingly, the Senate did not confirm a nominee before Mr. Sarcone's interim appointment expired.

Under § 546, if no successor is in place when the Attorney General's 120-day appointment ends, the district court for the relevant district may appoint a U.S. Attorney to serve until the vacancy is filled by a Senate-confirmed appointee. *See id.* § 546(d). On July 14, 2025, shortly before the expiration of Mr. Sarcone's interim term, the Board of Judges for the NDNY declined to exercise its authority under § 546(d) to appoint a U.S. Attorney. The same day, the Department of Justice ("DOJ") took a series of personnel actions. First, it reassigned Mr. Hanlon from FAUSA to Deputy U.S. Attorney, creating a vacancy in the FAUSA role. Second, it designated Mr. Sarcone as FAUSA for a period of one year. Third, it appointed Mr. Sarcone as a Special Attorney pursuant to 28 U.S.C. § 515 for an indefinite term. The Special Attorney

appointment letter, which was from the Executive Office for United States Attorneys, stated that Mr. Sarcone was "authorized to conduct in the [NDNY], any kind of legal proceedings, civil or criminal, . . . which United States Attorneys are authorized to conduct." Also on July 14, 2025, Mr. Sarcone sent a letter to the Chief Judge of the NDNY stating that, based on these actions and by operation of the FVRA, he was "now serving as Acting United States Attorney for the [NDNY] indefinitely."

Mr. Sarcone's authority to serve as Acting U.S. Attorney was subsequently challenged in connection with two grand jury subpoenas issued to the Office of the New York State Attorney General ("NYOAG"). On August 5, 2025, Mr. Sarcone personally requested issuance of the subpoenas in connection with federal criminal investigations concerning two civil enforcement actions brought by NYOAG. Both subpoenas identified "Acting United States Attorney" Sarcone as the federal prosecutor requesting the subpoena and did not name any other prosecutors. NYOAG moved to quash the subpoenas, arguing in relevant part that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney and that the subpoenas were unenforceable as a result.

While NYOAG's motion was pending, on October 8, 2025, the Attorney General issued an order ratifying Mr. Sarcone's appointment as Special Attorney and designation as FAUSA pursuant to her general delegation authority under 28 U.S.C. §§ 509, 510 and 515. The order further stated that, as FAUSA, Mr. Sarcone had authority to serve as Acting U.S. Attorney during the vacancy in the office of U.S. Attorney, subject to the conditions and time limits of the FVRA.

On January 8, 2026, the undersigned, sitting by designation, granted NYOAG's motion to quash. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 288 (N.D.N.Y. 2026) (the "Grand Jury Subpoenas Order"). The Grand Jury Subpoenas Order held

that, contrary to the Government's contention, Mr. Sarcone was not lawfully serving as Acting U.S. Attorney pursuant to the automatic succession provision of the FVRA because he was not FAUSA at the time the vacancy in the office of U.S. Attorney first arose. *Id.* at 294-97. The Grand Jury Subpoenas Order also rejected the Government's alternative argument that Mr. Sarcone was authorized to issue the subpoenas through his delegated authority as Special Attorney and FAUSA, concluding that the Attorney General could not use general delegation to vest Mr. Sarcone with the full authority of the U.S. Attorney outside the FVRA's exclusive vacancy-filling procedures. *Id.* at 297-98. The Grand Jury Subpoenas Order found problematic the purported authorization of Mr. Sarcone to "conduct any proceedings that U.S. Attorneys may conduct -- the full range of the office's powers." *Id.* at 298. The Grand Jury Subpoenas Order quashed the subpoenas and disqualified Mr. Sarcone from further involvement in the investigations underlying them. *Id.* at 298-300.

The Government appealed, and on August 21, 2026, the Second Circuit affirmed. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 188 F.4th 595, 598 (2d Cir. 2026), *petition for cert. filed*, No. 26-348 (U.S. Sep. 15, 2026). The Second Circuit agreed that Mr. Sarcone was not validly serving as Acting U.S. Attorney when he obtained the subpoenas because the FVRA permits only the FAUSA in place at the time the vacancy arises to become Acting U.S. Attorney automatically. *Id.* at 610. The Circuit also rejected the Government's alternative argument that the Attorney General's delegation of authority independently authorized Mr. Sarcone to issue the subpoenas, holding that the Attorney General could not circumvent the FVRA by delegating to Mr. Sarcone all of the functions and duties of the vacant U.S. Attorney position, leaving him

"indistinguishable from an *acting officer*."[1] *Id.* at 610-13. The Second Circuit affirmed both the decision to quash the subpoenas and the decision to disqualify Mr. Sarcone from further participation in the underlying investigations, finding that the Government had forfeited its challenge to the latter issue. *Id.* at 613-15.

**B. The Indictments and the NOI**

The following facts are from the record, including the submissions on the instant motion. On July 29, 2025, a federal grand jury returned the Initial Indictment charging Defendant with one count of malicious use of fire to destroy property resulting in death in violation of 18 U.S.C. § 844(i). The signature block at the end of the Initial Indictment lists Mr. Sarcone as "Acting United States Attorney," "By: [signature line] Alexander P. Wentworth-Ping [and] Richard Belliss[,] Assistant United States Attorney[s]." Only Mr. Wentworth-Ping signed the Initial Indictment.

Because Defendant was charged with a capital crime, the Court granted his request for the appointment of "learned counsel" pursuant to 18 U.S.C. § 3005 in September 2025. In January 2026, defense counsel made a mitigation submission and presented mitigation arguments to the Capital Review Committee. According to the Government, Mr. Sarcone's purported tenure as Acting U.S. Attorney expired under the FVRA on February 10, 2026, after which he retained his title as FAUSA.

On April 21, 2026, the Acting Attorney General sent Mr. Sarcone a letter stating: "You are authorized and directed to seek the death penalty against [Defendant]." On May 8, 2026, the Government filed a letter informing the Court of the Acting Attorney General's directive. The

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

letter states that "[t]he government intends to seek a superseding indictment in accordance with the Acting Attorney General's directive and to file a corresponding notice of intent."

On July 2, 2026, the Government obtained the Superseding Indictment against Defendant, which realleges the single count in the Initial Indictment but adds special findings that track the FDPA's statutory requirements for death-penalty eligibility. *See* 18 U.S.C. §§ 3591(a)(2), 3592(c); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 109 (2d Cir. 2008) (noting that, when the government seeks the death penalty, the statutory factors rendering a defendant death-eligible must be alleged in the indictment). The signature block at the end of the Superseding Indictment lists Mr. Blanche as "Acting Attorney General" and Mr. Sarcone as "First Assistant United States Attorney," "By: [signature line] Richard D. Belliss [and] Joseph S. Hartunian[,] Assistant United States Attorneys." Only Mr. Belliss signed the Superseding Indictment. The same day, the Government filed the NOI, which states that "the United States believes the circumstances in Count 1 of the Superseding Indictment . . . are such that, in the event of a conviction, a sentence of death is justified under [the FDPA], and that the United States will seek the sentence of death." The NOI identifies the factors that the Government intends to prove to "justify[] a sentence of death," which include the statutory intent and aggravating factors listed in the Superseding Indictment. The signature block at the end of the NOI is identical to the one in the Superseding Indictment. Only Mr. Hartunian signed the NOI.

On September 24, 2026, Defendant filed the instant motion. The motion is similar to earlier motions filed by the Office of the Federal Public Defender in the NDNY cases *United States v. Dunlap*, No. 25 Crim. 302, *United States v. Guillen*, No. 26 Crim. 226, and *United*

*States v. Gomez-Quiles*, No. 26 Crim. 10, though the instant motion does not seek Mr. Sarcone's disqualification from future participation in Defendant's case.

## II. DISCUSSION

### A. Dismissal of the Initial Indictment

Defendant moves to dismiss the Initial Indictment on the basis that Mr. Sarcone was unlawfully serving as Acting U.S. Attorney when the indictment was obtained. This motion is denied. Since Defendant's motion was filed, the motions to dismiss the indictments in *Dunlap*, *Guillen* and *Gomez-Quiles* based on Mr. Sarcone's involvement were denied. The principal basis for denial was that an AUSA's prosecutorial authority derives directly from the Attorney General and thus does not depend on whether Mr. Sarcone was lawfully serving as Acting U.S. Attorney or FAUSA when the indictments were obtained. *See, e.g.*, *Gomez-Quiles*, 2026 WL 3269871, at *3-5. Defendant's reply memorandum acknowledges that these decisions foreclose his challenge to the Initial Indictment, which was signed by an authorized AUSA.

For substantially the reasons stated in *Dunlap*, *Guillen* and *Gomez-Quiles*, Defendant's motion to dismiss the Initial Indictment is denied. Defendant's request for discovery and an evidentiary hearing concerning Mr. Sarcone's involvement in the decision to obtain the Initial Indictment is denied as moot.

### B. Dismissal of the Superseding Indictment and Striking of the NOI

Defendant moves to dismiss the Superseding Indictment and strike the NOI. Defendant argues that because DOJ policy requires the U.S. Attorney to participate in the decision whether to seek the death penalty, Mr. Sarcone's unlawful exercise of the powers of U.S. Attorney tainted the process that led to the Superseding Indictment and the NOI. This motion is denied. As explained below, the Attorney General -- not the U.S. Attorney -- makes the final decision

whether to seek the death penalty in a federal case involving a capital-eligible offense. Both the Superseding Indictment and the NOI resulted from the Acting Attorney General's April 2026 directive to seek the death penalty against Defendant.

Under the DOJ policy cited by Defendant, the Attorney General makes the final decision regarding whether to seek the death penalty. U.S. Dep't of Just., Just. Manual § 9-10.050 (2026);[2] *United States v. Fell*, 531 F.3d 197, 217 n.11 (2d Cir. 2008). Acting Attorney General Blanche determined that the Government would seek the death penalty against Defendant, and Defendant does not challenge Mr. Blanche's authority to do so. The Superseding Indictment -- which added special findings required to be included in the indictment when the Government seeks the death penalty -- and the NOI resulted from Mr. Blanche's directive and were signed by authorized AUSAs. Defendant cites no legal authority precluding validly serving AUSAs from signing indictments including special findings under the FDPA or notices of intent to seek the death penalty. *See* 18 U.S.C. § 3593(a) (requiring only that a notice of intent be signed and filed by "the attorney for the government"). Similarly, Defendant identifies no authority making the U.S. Attorney's participation a legal requirement for a valid death penalty decision.

Defendant underscores that the U.S. Attorney participates throughout the capital-review process and submits a recommendation whether the death penalty should be pursued. Even if true, this fact does not change the outcome. First, the Justice Manual contemplates the U.S. Attorney's participation in the decision-making process but does not establish that input as a prerequisite to the Attorney General's authority to seek the death penalty.

---

[2] The relevant chapter of the Justice Manual is available at https://www.justice.gov/jm/jm-9-10000-capital-crimes [https://perma.cc/9DNP-MVDA]. The chapter was most recently updated in June 2026, after the Acting Attorney General's decision to seek the death penalty in the instant case. Neither party identifies any intervening revisions to the chapter or argues that such revisions affect the issues presented here.

Second, the Justice Manual does not make the U.S. Attorney's recommendation dispositive. The manual generally requires capital-eligible cases to undergo review by the Capital Review Committee and the Attorney General regardless of whether the U.S. Attorney recommends seeking the death penalty. *See* Just. Manual §§ 9-10.080, 9-10.130. Moreover, the Attorney General is not bound by the U.S. Attorney's recommendation and has final decision-making authority. *See, e.g.*, *United States v. Kee*, No. 98 Crim. 778, 2000 WL 863119, at *5 (S.D.N.Y. June 27, 2000) (holding that Attorney General had discretion to override recommendation of U.S. Attorney not to seek death penalty because of "[t]he internal hierarchy of the Department of Justice, as well as the Attorney General's statutory authority to supervise litigation to which the United States is a party"); *United States v. Cooya*, No. 8 Crim. 70, 2011 WL 3608611, at *1-2 (M.D. Pa. Aug. 16, 2011) (same, noting that "the Court is unable to locate a single case that would prevent the Attorney General from overruling a local United States Attorney's recommendation regarding whether to seek the death penalty" and collecting cases); *see also* Just. Manual § 9-10.160 ("Once the Attorney General has authorized pursuit of the death penalty, the United States Attorney . . . may not withdraw a notice of intention to seek the death penalty unless directed by the Attorney General.").

The U.S. Attorney is only one of many participants in the decision-making process; the Attorney General may also receive recommendations from, among others, the Capital Review Committee and the Deputy Attorney General. *See* Just. Manual §§ 9-10.050, 9-10.130. Defendant has not established that any participation by Mr. Sarcone invalidated the Attorney General's decision or affected its outcome.

Defendant also argues that Mr. Sarcone's participation in the review process violated the Eighth Amendment because "it injected arbitrariness and fundamental unfairness" into the

decision to seek the death penalty. This argument is unavailing. As discussed above, the final decision was made by the Acting Attorney General, not Mr. Sarcone. In any event, Defendant points to no evidence, and there is no indication, that any role Mr. Sarcone might have played in the decision-making process rendered the Acting Attorney General's ultimate decision arbitrary, in bad faith or otherwise improper. The Attorney General "retain[s] broad discretion to enforce the Nation's criminal laws" and, "in the absence of clear evidence to the contrary, courts presume that [the Attorney General] ha[s] properly discharged [his] official duties." *United States v. Armstrong*, 517 U.S. 456, 464, 469-71 (1996) (holding that defendants failed to make threshold showing necessary to obtain discovery on their selective-prosecution claim); *accord United States v. Saipov*, No. 17 Crim. 722, 2019 WL 624176, at *3 (S.D.N.Y. Feb. 14, 2019) ("Absent a preliminary showing of arbitrary action, the Court must assume that the Attorney General's decision to seek the death penalty was made in good faith.").

Defendant's motion to dismiss the Superseding Indictment and strike the NOI is denied. Defendant's request for discovery and an evidentiary hearing concerning Mr. Sarcone's involvement in the decisions to obtain the Superseding Indictment and file the NOI is denied as moot.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion at Dkt. No. 68 is **DENIED**, and Defendant's request for oral argument at Dkt. No. 69 is **DENIED as moot**.

The Clerk of Court is respectfully directed to transfer the case back to Judge Nardacci.

Dated: November 24, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE